Chief Justice Robertson,
delivered the opinion of the court.
Whether Fanny, the plaintiff in error, is a free person of color, or a slave is the only question presented in this case, for consideration. And the question depends on the construction of a deed of emancipation acknowledged by George Smith, and recorded in Virginia, in 1798, which is as follows.
“Whereas I, George Smith, of Powhatan county, being fully convinced that slavery in all its forms, is contrary to good policy, that it is inconsistent with republican principles; that it is a violation of our bill of rights, which declares, that all men are by nature equally free; and above all, that it is repugnant to the spirit of the gospel, which enjoins universal love and benevolence-. In order,therefore, to dojusticetomy own feelings, and to do justice to my fellow-creatures, I do hereby emancipate, set free, and for myself and my heirs, relinquish all right, title and claim, to the following persons, after they arrive to the date herein mentioned, (viz:)
Owneroffiock sheeP Inay woo*which shall grow on '
Wwner of female slavfe may &ran<her furure increase
Edward, Mathew, John and Jenny to be free inline-■ciiately.
James, the 2d. day of March, . 1800.
Jacob, the 21st. of June, • • 1810.
Anna and her increase 1st. of August, 1810.
Fanny and her increase, June 9th, 1812.
Rachael and her increase, February 15th, 1815.
Julia and her increase, January 1st. 1816.
Isaac, Hecamber 9th, 18FA
In witness whereof I have hereunto set my hand and sea], this 21st. day of February, 1798.
GEORGE SMITH, (seal.)
Fanny (the plaintiff in error) is a child of Julia, and was born since 1798, and before 1816.
The circuit court instructed-the jury, that Fanny is a slave, and they found accordingly.
The maxim “Partus sequilar vefárem" does not apply to this case. If the grantor had been silent, as to the ‘‘increase,” and no intention tddiberate the children could be inferred from the deed, then Fanny would be undeniably a slave, because her mother was a slave when she (Fanny) was born. In such a case, the issue would be born a slave, and “Partus sequitur ventrem” would fix her doom.
But George Smith had the power légalas well as moral, to secure to Fanny, before jjer birth, all the benefits of freedom, and thus liberate her from hereditary slavery. Although it is< a general maxim that “wo one cun, give that which kc has not nevertheless, the ownei of a thing, being entitled to all its capacities, may grant them to another.
Thus the owner of a flock of sheep may grant the wool which shall grow on them. The owner of estate, corporeal or incorporeal, may grant its future profits. The owner of a female slave may grant her future increase. In all such cases, the grantor has potential light to the thing granted; because he has the perfict right to the thing, of which it is the natural offspring, or to which it is the incident. Noy's maxims, 83. Banks’s administrator vs. Marksberry, III Littell’s Rep. 230. Hart vs. Fanny Ann, VI Mon. 49.
Owner of female slave may grant to, her unborn issue their ‘Hiberti
Deed of emanen !ii¡' o lih-eratingfemale slave and ‘her increase’ on given day in futuro, emancipates all her issue horn after the date of the deed.
It has not been shown, that there was any thing in the laws of Virginia, which invalidated such a deed of emancipation. As therefore, George Smith could have granted to another, a valid legal right to Fanny by deed, dated before she was born, he had an equal right to grant her to herself, or to grant to her “LIBERTY.” Whether the grant would ever take effect, was contingent. It depended on her birth. The instant when she was born the grant operated, and it became certain and effectual, on the first of January, 1816.
Then, did George Smith intend that all the children of his female slaves, whether born before or after the freedom of the mothers, took effect, should also be free? That this was his intention, there can be no rational doubt. The whole tenor of his deed, eVinces a thorough conviction of the impolicy and injustice of slavery “in 'all its forms; and manifests, as clearly as language could manifest, his determination that, so far as was in his power, the slavery of his family should be extirpated; and be surely intended, that by destroying the roots, the branches should also perish.
But he has declared expressly, that Julia and her “increase” should be free on the first of January, 1816. What “increase” was meant? ' Children living at the date of the deed? Certainly not. There were none such; and if there had been, they, as well as their mothers, would have been designated by their names. Did the grantormean by “increase,” the children who might be born, after their mothers had been free ? S.urely not. The deed cannot include issue born, after 1816, because it declares that the issue shall be free on the first hf-January, 1816. These never did, nor ever could belong to Smith. They would be free, without his grant ■to them. He could not disfranchise them.
He therefore, evidently meant, by “increase” the ■children who might be born between the date of the ■-deed, add the actual liberation of the mothers. He h knew, that according to the maxim “Partus sequitur ven-7ton,”^4hey would be slaves contrary to his benevolent intSptiops, unless he relieved them from the doom to .whicl^the condition of their mothers at their birth, Would otherwise subject them. He never intended that ■ the mothers should be free, and their children slaves.
^nty°iourt to require emancipator j:0 for<rna?irte-nance of the emancipated person, does not destroy Power Io a slave, Security may quired be for maintenance of Pera°n0Vthose*i me at date of d?ed ?f eman-
Sanders, for plaintiff; Marshall, for defendant.
It is impossible to read the deed carefully and do justice to its emphatic and comprehensive language, without a clear conviction, that the benevolSnt grantor intended that all the slaves owned by him at the date of his deed, should be free whenever they attained a given age, and that all the children whom the females might, in the mean time, bear, should be free with, and as soon as their mothers.
If he intended that the- children should not be free, his professions of benevolence ujere- hypocritical, and all that he has said about liberty and slavery, is mere mimicry and empty declamation.
But any suspicion of his candor and philathropy, is rebuked by the liberal sentiments and emphatic language which characterize his-deed. The deed itself leaves no room, in our opinion, for d'oubting his intentions. *
The right of the county'court (if it existed in Virginia) to require-the emancipator to give security for the maintainance of the emancipated, can have no more elfect on the right to emancipate unborn issue, than it would have on the right to liberate persons in esse. The right to require the security might be enforced, as to persons unborn, as well as to those in being, at the date of the instrument of emancipation.. r
It is not material, whether the mother was a free woman in .fact, or only in prospect, when Fanny born; nor is it material whether the mother lived to enjoy her freedom. Fanny was entitled to her liberty on the first of January, 1816, the day on which her mother was to have been free.' The daughter, following the condition of the mother, was, as the deed was silent as to that matter, a slave until the first of January, 1816; but by its operation she was, on that day, entitled to all the privileges of a free woman of color. More especially, as the deed declares, that the mother ana! her increase shall be free on the first ofJanuary, 1816.
"Wherefore the judgment of the'circuit coy versed, and the cause remanded for a new trial^